**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LOUIS F. DISCIULLO, ET AL.,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 06-1775** |
| | : | |
| | : | |
| **D'AMROSIO DODGE, INC. t/a JEFF** | : | |
| **D'AMBROSIO'S DODGE,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM AND ORDER**

Tucker, J.                                          September 16, 2008

**<u>BACKGROUND</u>**

**A. Facts and Procedural History**

In 2006 Plaintiffs Disciullo, McCall and Ferrero ("Plaintiffs") filed individual lawsuits

against Defendant D'Ambrosio Dodge ("Defendant") seeking damages and equitable relief.

Each of Plaintiffs' Complaints alleged various violations of the Fair Credit Reporting Act, 15

U.S.C. § 1681 et seq. ("FCRA"), false pretenses and invasion of privacy.  Defendant filed

Motions to Dismiss each Complaint all of which alleged substantially the same grounds for

dismissal rejected by this Court in each of Defendant's preceding Motion to Dismiss.  The parties

then engaged in discovery and motion practice over the course of two years.  During this time

Defendants filed several motions including: Motions for Summary Judgment on each case; a

Motion for a Protective Order; and a Motion *in Limine*.  Each of Defendant's motions were

denied by this Court.

**B. The Settlement Agreement**

At the close of discovery Plaintiffs and Defendant engaged in a settlement conference with Magistrate Judge Caracappa who recommended to the parties that the case be settled for $45,000.  Rather than settle at this time, Defendants continued to engage in the above mentioned motion practice.  After all Defendant's motions were denied by this Court, Defendant offered and the parties ultimately agreed to Magistrate Judge Caracappa's recommended settlement amount of $45,000–$15,000 for each of the three Plaintiffs respectively.  The Settlement Agreement ("Agreement") acknowledged Plaintiffs counsel's right to attorney's fees and costs under the statute, but left the matter for resolution either by settlement or disposition by this Court.  Having failed to settle on attorney's fees and costs with Defendant, petitioners now seek $160,149 in fees and $15,701 in costs.

**FEES**

**A. Legal Standard for Awarding Attorney's Fees**

The FCRA provides explicit statutory authority to award costs and counsel fees to a prevailing party "in the case of any successful action to enforce any liability under this section." 15 U.S.C. § 1681o(a)(2) (2008).  The Agreement entered into between Plaintiffs and Defendant also provides for attorney's fees and costs to Plaintiffs' counsel.

The award of reasonable attorney fees is within the sound discretion of the district court. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  In a petition for attorneys' fees, the petitioner has the burden of showing that the fees and costs requested are reasonable by producing evidence that supports the hours and costs claimed.  See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990); see also Hensley, 461 U.S. at 433 (explaining that the burden is on the party

requesting fees to substantiate the hours expended on the litigation and the reasonableness of its requested hourly rate).  When attorneys' fees are awarded, the current market rate must be used. See id. at 1188-89 (stating that the current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed.)

In determining the amount of attorneys' fees to award, the first task before the Court is to determine the "lodestar": a computation of the reasonable hourly rate multiplied by the number of hours reasonably expended by the attorney.  Hensley, 461 U.S. at 433; see also Ursic v. Bethlehem Mines, 719 F.2d 670, 676 (3d Cir. 1983) (Determining the lodestar "suggests a twin inquiry into reasonableness: a reasonable hourly rate and a determination of whether it was reasonable to expend the number of hours in a particular case.").  The lodestar produces a presumptively reasonable calculation of attorneys' fees, Washington v. Philadelphia Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996), but a district court has considerable discretion to adjust the fee award for any reason put forth by the opposing party. Rode, 892 F.2d at 1183.

The party opposing the fee petition has the burden of providing a sufficient basis, by affidavit or brief, that gives the fee petitioners notice of the objections to the fees requested.  See Rode, 892 F.2d at 1183 (citing Bell v. United Princeton Properties, Inc., 884 F.2d 713, 715 (3d Cir. 1989)).  In objecting to the reasonableness of the hours expended, the opposing party may request a reduction of the lodestar on the grounds that, inter alia, the hours expended on the litigation were excessive, redundant, or unnecessary.

**B. The Lodestar Calculation**

*1. Reasonableness of the Hourly Rates Charged*

Defendant raises objections to the reasonableness of the hourly rates charged by Plaintiffs' counsel Frank Schwartz, law clerk Jessica Gulash, an unidentified law clerk, and legal assistants Joleena Schwalm and Joan Raughley.  Therefore, the Court will accept as reasonable all other hourly rates charged by counsel and staff not challenged by Defendant.  The Court's evaluation of the reasonableness of the hourly rates for the four individuals challenged by Defendant follows.

An attorney's normal billing rate provides a logical starting point to estimate the value of his or her services, but that is not dispositive.  See Pub. Interest Research Group v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995).  Hourly rates must also be compared to prevailing market rates in the community for similar service by lawyers of reasonably comparable skill, experience, and reputation.  Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); Smith v. Philadelphia Housing Authority, 107 F.3d 223, 225 (3d Cir. 1997).  The prevailing party bears the burden of producing sufficient evidence of reasonable market rates for the legal services provided, in addition to the attorney's own affidavits.  Smith, 107 F.3d at 225; Washington, 89 F.3d at 1035.  The burden then shifts to the party opposing the fee application to produce affidavits or other submissions that create an issue as to the reasonableness of the requested hourly rate.  See id. at 1036.  If the fee applicant fails to meet its initial burden or if the opposing party challenges the fee applicant's proffer, the determination of the appropriate market rate is vested within the court's discretion.  See Rode, 892 F.2d at 1183; see also Washington, 89 F.3d at 1036.  In exercising this discretion, the Court must assess the experience, skill and reputation of Plaintiffs' attorneys.  See Rode, 892 F.2d at 1183.

Petitioners have submitted an affidavit from Mark A. Kearney, an attorney practicing in a Pennsylvania law firm based in Blue Bell, which specializes in commercial litigation.  While the

Court does not find Mr. Kearney's affidavit particularly helpful, Mr. Kearney opined that based on his personal knowledge of the billing rates of partners, associates and paralegals in the community, the rates of the attorneys and staff at issue are reasonable and in line with the prevailing market rates charged for individuals of comparable skill and experience.  See Kearney Aff. ¶ 7.  In addition, petitioners submitted evidence from the National Law Journal's Annual Law Firm Billing Rate Survey[1] indicating that the hourly rates charged were reasonable.  See Pl.s' Mot. at 19.  Defendants, however, have submitted evidence that the prevailing market rates for attorneys and paralegals practicing in the Philadelphia area is lower than the rates petitioners seek.  See CLS Attorney Fee Schedule.[2]  The Court agrees with Defendants.  See Maldonado v. Houstoun, 256 F.3d 181, 187 (3d Cir. 2001) (finding Plaintiff's submissions insufficient to establish a reasonable market rate, but indicating that in such a case the attorney's fee schedule composed by Community Legal Services is "a fair reflection of market rates in Philadelphia.").

a. Frank Schwartz

Mr. Schwartz has been a commercial litigator since 1988 and his current hourly rate is $390.  Mr. Schwartz graduated from Villanova University School of Law.  He earned an LL.M., with honors, from Temple University School of Law and a Ph.D. in constitutional law from the University of North Carolina.  This Court finds that an hourly rate at the top range of the CLS fee schedule for attorney's with twenty years experience, $315, is a reasonable rate for an attorney of

---

[1] Petitioners indicate in their Motion that the National Law Journal's Survey demonstrates that the hourly rate for partners in the Philadelphia area is between $300-$850 per hour.  This figure, however, only accounts for the rates of the three largest firms in the Philadelphia area.  While, the Court's inquiry centers on comparable skill and experience not firm size, an inspection of the Survey cited  indicates that for all Philadelphia firms responding to the survey the actual range of rates charged by partners is between $135-$850.

[2] While Petitioners argument that a reasonable hourly rate must reflect current market rates is correct, the fact that the CLS Attorney Fee Schedule became *effective* as of 2006 does not lead to the conclusion that such rates are no longer current.

Mr. Schwartz's experience and training.

          b. Jessica Gulash

During the course of this litigation Ms. Gulash was a law student at the University of Pittsburgh School of Law.[3]  She was a member of the Pittsburgh Journal of Technology, Law & Policy.  Ms. Gulash's hourly rate was $135.  This Court finds that an hourly rate at the top range of the CLS fee schedule for a law student, $120, is a reasonable rate for a law clerk of Ms. Gulash's experience.

          c. Unspecified Law Clerk

During the course of this litigation an unspecified law clerk performed tasks for which petitioners billed at an hourly rate of $135.  Petitioner has put forth no evidence demonstrating this law clerks experience or credentials.  As such, this Court finds that an hourly rate in the middle range of the CLS fee schedule for a law student, $90, is a reasonable rate for the unspecified law clerk.

          d. Joleena Schwalm

Ms. Scwalm is a legal assistant with Lundy Flitter whose time petitioners bill at $135 per hour.  Petitioner has put forth no evidence demonstrating her experience.  As such, this Court finds that an hourly rate at the upper range of the CLS fee schedule for paralegals, $90, is a reasonable rate for Ms. Schwalm.

          e. Joan Raughley

Ms. Raughley is a legal assistant with Lundy Flitter whose time petitioners bill at $135 per hour.  She has been a legal assistant for twenty years.   This Court finds that an hourly rate at

---

[3]Ms. Gulash graduated from law school in May of 2008.

the top range of the CLS fee schedule for senior or supervisory paralegals, $120, is a reasonable

rate for a legal assistant of Ms. Raughley's experience.

### 2. *Reasonableness of Hours Expended*

A prevailing party may request fees for work that is "useful and [of] the type ordinarily

necessary to secure the final result obtained." Commonwealth of Pennsylvania v. Del. Valley

Citizens' Council, 478 U.S. 546, 560-61 (1986) (internal quotation omitted).  The fee petition

must be sufficiently specific to allow the court to determine if the hours claimed are unreasonable

for the work performed.  See Washington, 89 F.3d at 1037; Rode, 892 F.2d at 1190.  In this

Circuit, "computer-generated summaries of time spent by each attorney and paralegal," if they

provide "the date the activity took place," are sufficiently specific.  Id. at 1038.  A district court

has "the affirmative function" to "review the time charged, decide whether the hours set out were

reasonably expended for each of the particular purposes described and then exclude those that are

'excessive, redundant, or otherwise unnecessary.'"  Maldonado, 256 F.3d at 184 (quoting

Windall, 51 F.3d at 1188).

In support of its petition, petitioners have submitted over forty pages of itemized records

specifying the date when the work was performed, the attorney or legal assistant performing the

work, the nature of the work, the amount of time spent, and the hourly rate charged for that

particular task.  The Court finds that such submissions satisfy petitioners' burden of specificity.

While resolution of attorneys' fees should not result in a "second major litigation," Hensley, 461

U.S. at 437, the Court will discuss each of Defendant's challenges to the reasonableness of the

hours expended as follows.

a.  Clerical Tasks

Defendant contends that most of the fee petition consists of clerical tasks and other overhead expenses that should not be billed at attorney or paralegal rates.  The Third Circuit has declared that "we cannot condone 'the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals.'" <u>Halderman v. Pennhurst State School & Hosp.</u>, 49 F.3d 939, 942 (3d Cir. 1995) (quoting <u>Ursic</u>, 719 F.2d at 677).  The Court finds that some of petitioners time entries reflect tasks that are clerical in nature.  For example, petitioners billed for photocopying and scanning documents, and picking up copies from Kinkos at paralegal and associate rates.   Because petitioners have failed to demonstrate that their clients are separately billed for such clerical tasks, as opposed to such charges being a part of the firm's overhead,  the Court will reduce the lodestar in the amount of $297 to account for such tasks as reflected in Appendix A.

Specifically, Ms. Schwalm performed 0.9 hours of clerical tasks.  At the above discussed rate of $90 an hour, this amounts to a reduction in the lodestar of $81.  Similarly, Ms. Raughley performed 1.4 hours of clerical tasks.  At the above discussed rate of $120 an hour, this amounts to a reduction in the lodestar of $168.  Finally, Ms. Gulash performed 0.4 hours of clerical tasks.  At the above discussed rate of $120 an hour, this amounts to a reduction in the lodestar of $48.

b. Delegable Tasks Handled by Partners

Defendants next contend that many tasks performed by higher level attorneys could have been performed more cost effectively by junior associates or paralegals.  In general, "routine tasks, if performed by senior [attorneys] in *large firms*, should not be billed at their usual rates." <u>Ursic</u>, 719 at F.2d at 677 (emphasis added).  That, however, is not the case at bar.  The Third

Circuit has recognized that delegation is not always possible or desirable.  Id.  Indeed, the duty to delegate assumes that the attorneys charging high rates have junior associates and paralegals at their disposal to whom they can delegate.  See Poston v. Fox, 577 F. Supp. 915, 919-20 (D.N.J. 1984) (finding it not always possible to delegate in a small office).  Petitioners do not comprise a large law firm, as their practice consists of a handful of attorneys and legal assistants.  It is readily understood that attorneys in small firms often have limited access to junior level associates.  As such, this Court does not find the petitioners non-delegation of responsibilities unreasonable and no reduction in rates or hours for this reason is warranted.  See Roldan v. Phila. Hous. Auth., No. 95-6649, 1999 U.S. Dist. LEXIS 19093, at *14-15 (E.D. Pa. Dec. 7, 1999) (holding that a reduction in rates is unwarranted in a small office with no less experienced attorneys available to perform tasks).

### c. Inter-Office Communications

Defendants also argue that the Court should reduce petitioners fee award due to excessive inter-office communications and conferences between counsel.  The Court disagrees. "'Conferences between attorneys ... are necessary, valuable, and often result in greater efficiency and less duplication of effort, thus requiring fewer hours overall.'" Apple Corps. Ltd. v. Int'l Debt Collectors Society, 25 F. Supp. 2d 480, 488 (D.N.J. 1998) (quoting Stacy v. B.Q. Stroud, 845 F. Supp. 1135, 1144 (S.D. W. Va. 1993).  Accordingly, no reduction in the fee award is appropriate for petitioners inter-office communications.

### d. Billing for Duplicative and Excessive Time

Defendants further contend that because this case was eventually consolidated and all Plaintiffs' claims dealt with similar facts and concerned the same law, that petitioners spent an

unreasonable amount of time performing certain tasks.  The Court agrees.  While it is generally proper to compensate for paralegal fees and the services of more than one attorney, such compensation is only proper if there is no duplication of effort.  See Rego v. Arc Water Treatment Co. of Pennsylvania, No. 94-3734, 1998 U.S. Dist. LEXIS 9635, at *17-18 (E.D. Pa. June 30, 1998); see also Rode, 892 F.2d at 1187 (stating that a court may eliminate hours as duplicative "if the attorneys are unreasonably doing the same work.").

In the instant case, a careful review of the billing records submitted by petitioners revealed multiple instances where petitioners billed more than once for performing identical tasks.  Thus, the Court finds the following: 1) that 7.6 hours billed by Mr. Lorenz was duplicative; at a rate of $350 the Court will deduct $2,660 from the fee request; 2) that a total of 8.4 hours billed by Mr. Flitter over the course of this litigation was duplicative; at a rate of $495 the Court will deduct $4,158 from the fee request; 3) that 2.3 hours billed by Ms. Schwalm was duplicative; at a rate of $90 the Court will deduct $207; 4) that at total of 14.1 hours billed by Mr. Schwartz was duplicative; at a rate of $315 the Court will deduct $4,441.50; 5) that 2.8 hours of Ms. Frazier's time billed was duplicative; at a rate of $195 I will deduct $546; and 6) that 1.1 hours of Ms. Raughley's billed time was duplicative; at a rate of $120 the Court will deduct $132.

## C. The Lodestar Amount

Petitioner's fee request is for $160,149.  Based on the above discussion, the Court has determined that a total lodestar amount of $136,504 is reasonable.  The calculation of this amount is outlined below.

*1. Reductions Based on the Hourly Rate Charged*

  a. Frank Schwartz

In petitioners' original lodestar fee request Mr. Schwartz billed 131.9 hours at $390 for a total of $51,441.  The Court determined that a reasonable hourly rate for Mr. Schwartz is $315. Thus, his new lodestar amount is $41,548.50.

  b. Jessica Gulash

In petitioners' fee request Ms. Gulash billed 13.7 hours at $135 for a total of $1,849.50. The Court determined that a reasonable hourly rate for Ms. Gulash's time is $120.  Thus, her new lodestar amount is $1,644.

  c. Unspecified Law Clerk

In petitioners' fee request an unspecified law clerk billed 8.6 hours at $135 for a total of $1,161.  The Court determined that a reasonable hourly rate this unspecified law clerk's time is $90.  Thus, the new lodestar amount for the unspecified clerk is $774.

  d. Jessica Schwalm

In petitioners' fee request Ms. Scwalm billed 12.6 hours at $135 for a total of $1,701. The Court determined that a reasonable hourly rate for Ms. Schwalm's time is $90.  Thus, her new lodestar amount is $1,134.

  e. Joan Raughley

Including petitioners' updated fee petition, Ms. Raughley billed 10.3 hours at $135 for a total of $1,390.50  The Court determined that a reasonable hourly rate for Ms. Raughley's time is

$120.  Thus, her new lodestar amount is $1,236.

### 2. Reductions Based on Performance of Clerical Tasks

As explained above, the lodestar amount was reduced by $297 for the billing of clerical tasks.

### 3. Reductions Based on Performance of Duplicative Tasks

As explained above, the lodestar amount was reduced by $12,144.50 for the billing of duplicative tasks.

## D. Reduction for Lack of Success

Defendant also contends that petitioner's fee award should be reduced for partial or limited success.  Defendant's contention, however, is without merit.

The Supreme Court has explained that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  Hensley, 461 U.S. at 436 (stating that "the most critical factor" in determining the reasonableness of fee award "is the degree of success obtained").  A plaintiff is a prevailing party if he succeeds on a significant issue and achieves some of the benefits sought in bringing the suit.  Id. at 433.  Moreover, a party who has obtained an enforceable judgment against the party whom fees are sought is a prevailing party.  Farrar v. Hobby, 506 U.S. 103 (1992).  In measuring the level of success a plaintiff has achieved, a district court may consider the amount of damages awarded compared to the amount of damages requested.  Id. at 114.  This assessment, however, is distinct from a proportionality analysis between the amount of damages actually awarded and the amount of fees counsel requests, which

is an impermissible basis upon which to reduce a fee award.  See Washington, 89 F.3d at 1042.

Though the underlying lawsuit was settled rather than fully litigated, it is clear that petitioners were successful.  Indeed, both parties stipulated in the Agreement that "the Lawsuit is deemed to constitute a 'successful action' for purposes of an award of reasonable statutory legal fees and costs to Plaintiff."  Pl.s' Ex. C. ¶ 1.  Thus, it is disingenuous for Defendants to now assert that petitioners have only been partially successful in this action.  In fact, petitioners have been fully successful at every stage of this litigation.  For instance, each of Defendant's Motions to Dismiss Plaintiffs' claims were denied by this Court.  Similarly, each of Defendant's Motions for Summary Judgment were denied by this Court and all of Plaintiffs' initial claims were ready to be tried by this Court.  Furthermore, petitioners obtained a total settlement award for the three Plaintiffs in this action in the amount of $45,000.  By any measure of the word, petitioners were successful.  Therefore, this Court will not reduce the lodestar amount based on partial or limited success.

## COSTS

Petitioners initially requested costs in the amount of $15,952.  Defendant objected to these costs on the grounds that they were excessive and that many of the costs should be included as part of firm overhead.   Petitioners subsequently reduced bulk postage by $53.47 and withdrew a requested meal expense in the amount of $196.70.  Thus, the adjusted request for costs and expenses is $15,701.83.  Petitioners filed contemporaneous computerized records documenting the costs expended and disbursements made.

Section 1681o(a)(2) authorizes an award of costs to the prevailing party.  Although section 1681o(a)(2) does not expressly set forth the type of costs that may be recovered, a federal

statute, 28 U.S.C. § 1920 (2003),  provides guidance in this regard.[4]  The Third Circuit has

determined that "only those litigation expenses that are incurred in order for the attorney to be

able to render his or her legal services" are reimbursable.  Abrams v. Lightolier, Inc., 50 F.3d

1204, 1225 (3d Cir. 1995).  In this Circuit, the following expenses are generally recoverable as

part of attorneys' fees "when it is the custom of attorneys in the local community to bill their

clients separately for them": (a) photocopying expenses; (b) the attorney's telephone expenses; (c)

travel time and expenses of the attorney; and (d) postage.  See id. (citations omitted).  The costs

and expenses incurred by petitioners, however, are subject to the Court's determination that they

are reasonable and necessary.  See id.  In addition, the fee applicant has the burden of adequately

documenting and itemizing the costs requested.  See Hall v. Harleysville Ins., 943 F. Supp. 536,

546 (E.D. Pa. 1996).

    Petitioners submit that they have sufficiently itemized their expenses.  However, in

several instances they have not.  Petitioners merely set forth their expenses in generalized

categories, e.g., photocopy expense.  Hence, petitioners have not met their burden of adequately

documenting that their out-of-pocket expenses were "incurred in order for the attorney to be able

to render his or her legal services."  Abrams, 50 F.3d at 1225.  Therefore, while the Court will

allow the majority of expenses incurred,[5] for a total award in costs of $15,187.99, specific

---

[4] 28 U.S.C. § 1920 provides a judge or clerk of any court of the United States may tax as costs the
following: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic
transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for
exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of
this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses,
and costs of special interpretation services under section 1828 of this title.

[5] Expenses for experts are recoverable, particularly where they are indispensable.  See Black Grievance
Comm.v. Philadelphia Elec. Co.,802 F.2d 648, 657 (E.D. Pa. 1988).  Similarly, the cost of deposition transcripts is
indisputably recoverable.  In re Paoli R.R. Yard PCB Litig., 221 F.3d 449 (3d Cir. 2000).  Also fee applicants are
generally compensated for reasonable expenses associated with computer research.  See O'Farrell v. Twin Bros.
Meats Inc., 889 F. Supp. 189, 192 (E.D. Pa. 1995).  In addition, the Third Circuit has held that an attorney's travel,
parking expenses and fax expenses are recoverable if they are "incurred in order for the attorney to render

deductions are as follows.

*1. Photocopying Expenses*

In general photocopying expenses are recoverable as long as the cost per page and the number of copies was not excessive and the copies were reasonably related to the litigation.  See id.  In addition, photocopying expenses must have been necessary to effective and competent representation. See id.

Here petitioners have submitted six photocopying expenses.  For only one of these submissions did petitioners provide to the Court evidence of the number of copies made and the cost per page.  For all other submissions petitioners provided no evidence of how many photocopies were made or the cost per page of the copies.  Thus, it is nearly impossible for this Court to determine whether or not petitioners photocopying expenses were reasonable.  Since petitioners have failed to properly itemize their photocopying expenses and have not provided the Court with how many pages it copied or what justification exists for the number of copies, see Apple Corps., 25 F. Supp. 2d at 498, the Court will reduce the photocopying costs as follows: 1) for the one submission where petitioners documented the number of copies made and the cost per page, the Court will allow the full expense of $51; 2) all other photocopying charges totaling $947.68 will be reduced by 50% to $473.84.

*2. Express Mail and Courier Services*

Petitioners seek to recover $177 in delivery and express mail charges.  The Third Circuit has never explicitly determined whether express mail charges and courier services are

---

his legal services." Abrams, 50 F.3d at 1225.  Finally, costs for postage expenses are generally allowed where they are not part of the ordinary overhead included in an attorney's hourly rate and petitioners have already voluntarily reduced their postage fees.

reimbursable.  See Halderman, 855 F. Supp. at 744 (allowing those charges because they were reasonable and were related to the litigation).  In determining whether those expenses are reimbursable as part of attorneys' fees, the Court must look to whether the expenses were "incurred in order for the attorney to be able to render his or her legal services."  Abrams, 50 F.3d at 1225.  The Court must also consider whether attorneys generally bill such expenses to the client.  Id.

Expedited delivery is often essential to a party's ability to comply with court deadlines.  In addition, such costs are typically charged  to the client.  Thus, the Court finds that express mail charges and courier expenses are recoverable here.  Petitioners, however, submitted one such charge for courier services that was duplicative.  The Court will, therefore, reduce these expenses by the amount of the duplicative charge, $40.

**CONCLUSION**

Petitioners are awarded $136,504 in reasonable attorney's fees, and $15,187.99 in costs, a total of $151,691.99.  Interest earned on these amounts shall accrue on behalf of petitioners until the date Defendant tenders payment.  An appropriate order follows.

**APPENDIX A (Clerical Tasks)**

Appendix A reflects petitioners' entries as they appear in Exhibit A of the Brief in Support for Award of Statutory Attorney's Fees and Costs**.**

| Date | Hours Billed | Description | Deduction |
|------|--------------|-------------|-----------|
| 4/12/06 | .80 | Bulk copying of documents for electronic mgmt/archive | .80 |
| 3/30/07 | .30 | Bulk copies of discovery documents to produce to defendant | .30 |

| 8/15/07 | .30 | Bulk copies of discovery documents to be produced to defendant | .30 |
| 8/16/07 | .40 | Scan/archive Defendant's Answers to Interrogatories & Response to Document Requests with Documents | .40 |
| 9/17/07 | .30 | Copies of bulk documents for preparation of deposition | .30 |
| 11/14/07 | .20 | Scan letter from Erin McCall and TU Credit report for Robert. | .20 |
| 2/16/08 | .40 | Travel to Kinko's & pick up bound copies of Brief in Opposition to Defendant's Motion for Summary Judgment | .40 |

**APPENDIX B (Duplicative Tasks)**

Appendix B reflects petitioners' entries as they appear in Exhibit A of the Brief in Support for Award of Statutory Attorney's Fees and Costs.

| Date | Hours Billed | Description | Deduction |
|------|--------------|-------------|-----------|
| 4/3/06 | 1.5 | Meet with R. McCall and E. McCall regarding identity theft. | 1.5 |
| 4/14/06 | .30 | Conf. CLF regarding expert for damage analysis | .20 |
| 5/12/06 | .10 | Entry/jury demand by D | .10 |
| 5/25/06 | .20 | Tel call and ltr from def counsel re stip to extend; sign and ltr reply | .20 |
| 6/19/06 | .60 | Recv and review D's motion to dismiss with brief | .60 |
| 6/20/06 | .80 | Draft detailed depo notice, Rule 30(b)6 with document request; ltr def atty re need for depo | .80 |
| 6/23/06 | 2.0 | Draft and edits opposition to motion to dismiss; select LR on waiver by failure to brf etc | 2.0 |
| 6/27/06 | .20 | Letter to defense counsel regarding his cancellation of defendant's deposition | .20 |
| 6/27/06 | .40 | Scan exhibits and ecf file opposition to motion to dismiss; preparation of letter to J. Tucker. | .40 |

| 6/28/06 | .30 | Edit R. 26 disclosures | .3 |
|---------|-----|------------------------|-----|
| 6/30/06 | .70 | Draft response to motion for protective order and motion to compel discovery. | .70 |
| 7/3/06 | .50 | Selected legal research in connection with motion for protective order | .50 |
| 7/22/06 | 1.0 | Work on interrogatories and requests for production of documents to D'Ambrosio | 1.0 |
| 7/26/06 | .20 | Preparation of letter to M. Perry; send and diary discovery req. | .20 |
| 8/2/06 | .20 | Ltr Atty Perry re document preservation | .20 |
| 8/2/06 | .10 | Conf CLF re: status. | .10 |
| 8/17/06 | .10 | Ltr. M. Perry re no spoliation | .10 |
| 8/22/06 | .10 | Tel call M. Perry re spoliation, he instr Def not to destroy anything | .10 |
| 8/25/06 | .10 | Review R. 26 disclosure | .10 |
| 9/13/06 | .10 | Status conf TEL | .10 |
| 9/21/06 | .20 | Tel conf w/M. Perry regarding status of case. | .20 |
| 9/25/06 | .50 | Recv answers to discovery req from def, review with TEL, rev regulations | .50 |
| 9/25/06 | .30 | Conf CLF regarding claims against defendant. | .30 |
| 10/2/06 | .70 | Draft letter to defense counsel regarding deficient discovery responses. | .70 |
| 10/13/06 | .20 | Transmittal letter enclosing subpoena to Credco | .20 |
| 11/6/06 | .40 | Review discovery rec'd from Credco | .40 |
| 11/14/06 | .10 | Conf CLF regarding production of Credco docs and need for confidentiality agreement. | .10 |
| 12/6/06 | .30 | Review supplemental discovery responses from D'Ambrosio. | .30 |
| 1/29/07 | .20 | Conf CLF re: status | .20 |
| 1/31/07 | .10 | Letter to police departments regarding subpoena served by Perry. | .10 |

| 2/7/07 | .10 | Letter to Upper Merion police regarding records. | .10 |
|--------|-----|--------------------------------------------------|-----|
| 2/20/07 | .10 | Conf CLF re: status | .10 |
| 3/1/07 | .40 | Rev draft confid agrmt, conf TEL | .40 |
| 3/6/07 | .20 | Recv and rev Answer to complt with aff D's, email TEL re status incl need for depos | |
| 3/6/07 | .10 | Email TEL re status of case | .10 |
| 3/30/07 | .30 | Bulk copies and electronic archive of discovery documents in response to defendant's discovery req. | .30 |
| 4/9/07 | .30 | Conf CLF regarding status and police report | .30 |
| 4/26/07 | .50 | Review documents to be sent in response to discovery | .50 |
| 4/27/07 | .50 | Bates Stamped add'l bulk documents to be produced as discovery | .50 |
| 5/7/07 | 1.3 | Revise Confidentiality Agreement and Attachments | 1.3 |
| 5/7/07 | 1.0 | Preparation of draft Confidentiality Agreement | .50 |
| 5/9/07 | .20 | Research re: Michael Reitano | .20 |
| 5/9/07 | .20 | Research re: Michael Reitano | .20 |
| 5/9/07 | .40 | Preparation of depo notices | .40 |
| 5/11/07 | .20 | Proof Depo Notices | .20 |
| 6/8/07 | .80 | Draft pretrial information report and joint discovery plan | .80 |
| 6/8/07 | 1.0 | Draft Pretrial Conference Information Report; Joint Discovery Plan | 1.0 |
| 6/11/07 | .30 | Scan docs and update discovery binder | .30 |
| 6/18/07 | .40 | Meeting with CLF re: status | .40 |
| 6/18/07 | .40 | Meeting with CLF re: status | .40 |
| 6/19/07 | .30 | Download ecf notice & pleading from court; update pleadings binder | .30 |

| 6/28/07 | .60 | Review scheduling order; diary dates; telephone to M. Perry re: overdue discovery responses | .60 |
|---|---|---|---|
| 6/28/07 | .30 | Review scheduling order; diary dates; telephone to M. Perry re: overdue discovery responses | .30 |
| 8/3/07 | .20 | Conference with CLF re: status | .20 |
| 8/3/07 | .30 | Conference with CLF re: status | .30 |
| 8/6/07 | .20 | Preparation of memo to FS re: get discovery moving. | .20 |
| 8/9/07 | .30 | Review police/fraud investigation reports | .30 |
| 8/10/07 | .20 | Update status report | .20 |
| 8/10/07 | .40 | Prepared notices of deposition to Jeff D'Ambrosio, Anthony Gable, Bruce Smoyer, and Heather Karkoska | .40 |
| 8/14/07 | .20 | Draft of FS entry of appearance and ecf filed | .20 |
| 8/15/07 | .30 | Bulk copies of discovery documents to be produced to defendant | .30 |
| 9/10/07 | 1.3 | Review all documents produced by all parties to prepare for D'Ambrosio depostions | 1.3 |
| 9/12/07 | 1.0 | Prepare for deposition of H. Kurkosa | 1.0 |
| 9/17/07 | .30 | Copies of bulk documents for preparation of deposition | .30 |
| 9/21/07 | 1.2 | Meeting to prepare for deposition | 1.2 |
| 9/21/07 | 1.2 | Meeting to prepare for deposition | 1.2 |
| 10/3/07 | .70 | Draft settlement demand letter | .70 |
| 10/3/07 | .70 | Draft settlement demand letter | .70 |
| 10/7/07 | .90 | Review facts, credit denials etc; review and edits to sett demand ltr, case cites etc. | .90 |
| 10/26/07 | .60 | Letter to D. Stivers re: expert report; compile documents to be sent to D. Stivers | .60 |
| 10/26/07 | .60 | Letter to D. Stivers re: expert report; compile documents to be sent to Stivers | .60 |
| 11/16/07 | 1.0 | Review expert report | 1.0 |

| 11/16/07 | .90 | Review P's expert report | .90 |
| 12/5/07 | .20 | Conf with CLF re: expt and sett issues | .20 |
| 12/5/07 | .20 | Conf with CLF re: status | .20 |
| 3/31/08 | .30 | Edit settlement agreement | .30 |
| 3/31/08 | .30 | Edit settlement agreement | .30 |
| 4/23/08 | .20 | Recv sett check; endorse; ltr to client w/enclosure and re status remaining motion practice | .2 |

**APPENDIX C (Expenses)**

Appendix C reflects petitioners' entries as they appear in Exhibit A of the Brief in Support for Award of Statutory Attorney's Fees and Costs.

| Date | Expense | Cost | Deduction |
|---|---|---|---|
| 4/26/06 | Photocopy Expense | $215.85 | $107.93 |
| | Photocopy Expense | $181.95 | $90.98 |
| 5/1/06 | Photocopy Expense | $490.65 | $245.32 |
| 10/13/06 | Courier Expense | $40 | $40 |
| 9/14/07 | Records/Copies | $25.00 | $12.75 |
| 2/20/08 | Kinko's | $34.23 | $17.12 |

**ORDER**

AND NOW, this _____ day of September, 2008, for the reasons stated in the foregoing

memoranda, the Court finds that attorney's fees and costs awarded to petitioners are reasonable.

Therefore, it is ORDERED that petitioners are awarded reasonable attorneys fees and

costs as follows: $136,504 in fees and $$15,187.99 in costs, totaling $151,691.99.  Interest

earned on these amounts shall accrue on behalf of petitioners until the date Defendant tenders

payment.


**BY THE COURT:**

**/s/ Petrese B. Tucker**

**_____**

**Honorable Petrese B. Tucker, U.S.D.J.**